U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 SEP 30 AM 8:22

CLERK

BY ______ KR
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF VERMONT**

| | | |
|---|---|---|
| ESTATE OF EVA C. PUPPOLO by CELESTE PUPPOLO, Executor and CELESTE PUPPOLO, Individually, Plaintiffs, | ) | |
| v. | ) | Case No. 2:24-cv-01238 |
| R. PETER DECATO, ESQ. and DECATO LAW OFFICE, P.C. and EACH EMPLOYEE OR OFFICER OF DECATO LAW OFFICE OR SURETY OR ANY UNKNOWN PARTIES OR PERSONS WHO CAUSED HARM TO PLAINTIFFS, Defendants. | ) | |

**ORDER GRANTING MOTION TO DISMISS, DENYING ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT, AND DENYING MOTION FOR LEAVE TO AMEND**
**(Doc. 26 and Doc. 38)**

This action involves allegations of fraudulent conduct by Defendants R. Peter Decato, Esq., Decato Law Office, P.C., and each employee or officer of Decato Law Office ("Decato" or "Defendants") during their representation of Plaintiffs in a legal malpractice claim filed against an attorney who represented them in a 2014 action. There are two motions pending before the court. In response to Plaintiffs filing an Amended Complaint, Defendants filed a Motion to Dismiss and an Alternative Motion for More Definite Statement. (Doc. 26.) Plaintiffs filed an opposition to the Motion, (Doc. 28), and filed a Motion for Leave to File Second Amended Complaint, (Doc. 38.) Defendants oppose the Motion for Leave to File Second Amended Complaint, arguing that any amendment would be futile. (Doc. 40.)

**Procedural History**

This is the fourth lawsuit arising from the 2003 death of Eva Puppolo when she was a resident at the Crescent Manor Nursing Home in Bennington, Vermont.[1] The first cause of action was a wrongful death and medical malpractice claim against Crescent Manor and her treating physicians. *Puppolo v. Welch et al.*, No. 5:14-cv-00095, Compl., Dkt. No. 1 (May 7, 2014). Plaintiffs retained Christopher Dodig, Esq. to prosecute these claims. *Id.* Plaintiffs alleged that Attorney Dodig committed legal malpractice by failing to provide them with accurate advice regarding the statute of limitations. *Id.* The second cause of action was a legal malpractice case against Attorney Dodig. *Id.* Plaintiffs retained John Welch, Jr. to pursue the claim against Attorney Dodig. *Id.* This case went to trial in January 2010 in Vermont Superior Court and resulted in a verdict for the defense. That verdict was upheld by the Vermont Supreme Court in 2011. *See Puppolo v. Donovan & O'Connor, LLC*, 2011 VT 119, ¶ 24, 191 Vt. 535, 541, 35 A.3d 166, 175.

Thereafter, Plaintiffs retained Defendants to prosecute claims against Attorney John Welch, Jr. *See Puppolo v. Welch et al.*, No. 5:14-cv-00095, Compl., Dkt. No. 1 (May 7, 2014). There were four counts raised in that case, all of which were dismissed prior to trial. *See id.* The dismissals were affirmed by the Second Circuit Court of Appeals on June 20, 2019. *See Puppolo v. Welch,* 771 F. App'x 64, 66 (2d Cir. 2019).

In the present case, Plaintiffs filed a seventy-five-page complaint alleging Defendants committed fraud and breach of contract in their prosecution of the lawsuit against Attorney Welch. (Doc. 1.) In response, Defendants filed a Motion to Dismiss and Motion for a More Definite Statement. (Doc. 21.) The court denied the Motion to Dismiss and granted the Motion for a More

[1] Both parties have referenced the underlying legal malpractice case in which Defendants represented Plaintiffs. *See Puppolo v. Welch, et al.*, No. 5:14-cv-00095, 2018 WL 3037383 (D. Vt. June 19, 2018). To provide a full understanding of the litigation history, some of the undisputed procedural history has been taken from orders in that case.

Definite Statement. (Doc. 24.) The court found the Complaint was "ambiguous, confusing, and redundant[,]" and contained legal argument and improper commentary. (Doc. 24 at 4.) Plaintiffs were ordered to file an amended complaint which complied with the requirements of Federal Rule of Civil Procedure 8. (*Id.* at 5.)

Plaintiffs filed an Amended Complaint, which raises three claims against Defendants: Fraudulent Misrepresentation, Fraudulent Concealment, and Breach of Contract. (Doc. 25.) The Amended Complaint also seeks punitive damages. (*Id.*)

After receiving the Amended Complaint, Defendants filed a Motion to Dismiss and Alternative Motion for a More Definite Statement. (Doc. 26.) In their Motion, Defendants argue the two counts that allege fraud do not comply with the heightened particularity requirement of Federal Rule of Civil Procedure 9. (*Id.*) Additionally, Defendants argue all three counts should be dismissed for failure to state a claim upon which relief can be granted. (*Id.*) Finally, Defendants assert all claims should be dismissed because issue preclusion prevents Plaintiffs from establishing causation. (*Id.*)

Plaintiffs opposed the Motion to Dismiss and Motion for More Definite Statement, arguing the content of the defense motions demonstrate an understanding of Plaintiffs' claims and factual allegations. (Doc. 28 at 2.) In opposing Defendants' Motions, Plaintiffs rely on allegations from the original Complaint as well as the Amended Complaint. (*Id.* at 3.) After filing their response to the Motion to Dismiss, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint. (Doc. 38.) In support of their request, Plaintiffs argue the Second Amended Complaint includes twenty-three pages of the "specificity and particularization" sought by Defendants. (*Id.* at 2, ¶ 1.) The proposed Second Amended Complaint, over the span of thirty pages, asserts two causes of action, including Fraudulent Inducement and Consumer Fraud in the Practice of Law and

Fraudulent Misrepresentation and Concealment (Fraud Upon Plaintiffs and Fraud Upon the Court). (Doc. 38-1.)

Defendants oppose Plaintiffs' efforts to file a Second Amended Complaint. (Doc. 40.) They assert the amendments are futile because the Second Amended Complaint suffers from the same deficiencies as the original complaint and further allege the claims cannot survive a motion to dismiss because of issue preclusion. (*Id.*)

**Standard of Review**

Federal Rule of Civil Procedure 41(b) provides that a defendant may move to dismiss an action if the plaintiff fails to comply with the Federal Rules of Civil Procedure or a court order. Fed. R. Civ. P. 41(b). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The pleading standard under Rule 8 does not require detailed factual allegations, but a pleading must contain more than mere conclusory allegations absent some factual development. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted); *see* Fed. R. Civ. P. 12(b)(6). Facial plausibility exists when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The facts must present more than a sheer possibility of liability. *Id.* The court's review of the facts is limited to those "facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated... by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). In ruling on a motion to dismiss, the court must accept as true "all non-conclusory factual allegations in the

complaint and draw all reasonable inferences in Plaintiffs' favor." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (citations omitted).

When a plaintiff alleges fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement. "[A] party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Second Circuit has interpreted this rule to require the complaint to "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 171 (citations omitted). The complaint must also "allege facts 'that give rise to a strong inference of fraudulent intent.'" *Id.* (citations omitted). The claim must also allege facts that either show defendant had both motive and opportunity to commit fraud or that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Citibank N.A. v. City of Burlington*, 971 F. Supp. 2d 414, 430 (D. Vt. 2013) (citations omitted). Plaintiff is not required to plead facts that make fraud more probable than other explanations. *Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 175.

When plaintiffs seek to amend their complaints for a second time, they must either obtain the other party's consent or the court's permission. Fed. R. Civ. P. 15(a)(2). There is a strong preference for deciding claims on their merits. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). For that reason, courts should freely grant permission to file an amended complaint when justice requires. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also* Fed. R. Civ. P. 15(a)(2). Amendment may be denied, however, when a reason justifies the denial, such as futility of amendment, undue prejudice to the opposing party, or repeated failures to correct the deficiencies in a pleading. *Id.*

**Facts as Alleged in the Complaint**

The court must accept all factual allegations in the Amended Complaint as true and draw all reasonable inferences from those facts in Plaintiffs' favor when deciding a motion to dismiss for failure to state a claim. *See Metz v. U.S. Life Ins. Co. in City of N.Y.*, 662 F.3d 600, 602 (2d Cir. 2011) (citations omitted). The filing of the Amended Complaint leaves the Original Complaint with no legal effect, and the factual allegations contained therein are not considered. *See Harris v. City of N.Y.*, 186 F.3d 243, 249 (2d Cir. 1999). The Amended Complaint alleges that Plaintiffs, on or about August 1, 2015, retained Decato to represent them in a legal malpractice claim against their former attorney John J. Welch, Jr. and his firm. (Doc. 25 at 3, ¶ 8.) Attorney Welch and his firm represented Plaintiffs in claims relating to the death of Eva C. Puppolo. (*Id.*)

In their communications with Plaintiffs, Defendants represented they had substantial experience with complex malpractice cases, would meet court deadlines, investigate and present Plaintiffs' evidence, keep Plaintiffs informed, and act in Plaintiffs' best interests. (Doc. 25 at 3, ¶ 9.) While Defendants were representing Plaintiffs, the court sanctioned Plaintiffs for failing to disclose their legal expert report in a timely manner and found that such nondisclosure was willful and neither harmless nor excusable. (*Id.* at 3, ¶ 10.) Defendants did not attempt to cure the untimely filings which contributed to adverse rulings and dismissal of claims. (*Id.*) Defendants also failed to conduct agreed discovery, submit audio recordings and other material evidence, oppose or properly respond to defense submissions, and meet multiple deadlines while assuring Plaintiffs that all filings had been made. (*Id.* at 3, ¶ 11.) Defendants hid from Plaintiffs the court orders and docket entries which referenced their noncompliance. (*Id.* at 4, ¶ 12.) Finally, Defendants also pressured Plaintiffs to accept funds from opposing counsel to conclude the matter, which Plaintiffs rejected. (*Id.* at 4, ¶ 13.)

## Analysis and Conclusions of Law

### A. Count One of the Amended Complaint Alleging Fraudulent Misrepresentation Does Not Comply With Rule 9

Count One of the Amended Complaint alleges fraudulent misrepresentation. (Doc. 25.) Under Vermont law, a claim for fraudulent misrepresentation requires "an intentional misrepresentation of existing fact, affecting the essence of the transaction, so long as the misrepresentation was false when made and known to be false by the maker, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to his damage." *Silva v. Stevens*, 589 A.2d 852, 857 (Vt. 1991) (citations omitted). A broken promise, without more, does not constitute fraud. *See id.*

Plaintiffs summarize their allegations of fraudulent misrepresentation by asserting, "Defendants represented that they had complied with Court orders and deadlines, had submitted expert and evidentiary materials and were diligently prosecuting Plaintiffs' case; they further represented they possessed the requisite experience and would act in Plaintiffs' best interests." (Doc. 25 at 5, ¶ 20.) These vague statements, even when read in conjunction with Paragraphs 1–17 of the Amended Complaint, do not meet the heightened pleading standard required by Rule 9. The Complaint does not identify when and where these specific representations were made, nor does it explain what the Defendants' specific statements were. Plaintiffs are required to allege such particularized details in connection with an allegation of fraud in order to survive a motion to dismiss for failure to state a claim.

Moreover, the Amended Complaint fails to explain why Defendants' statements were fraudulent. The Amended Complaint simply alleges, "[a]t the time the statements were made, Defendants knew they were false or made them with reckless disregard for the truth, intending Plaintiffs to rely on them." (Doc. 25 at 5, ¶ 21.) Plaintiffs' Amended Complaint neither alleges

facts demonstrating Defendants had both motive and opportunity to commit fraud nor includes strong circumstantial evidence of such. For these reasons, the count of Fraudulent Misrepresentation does not satisfy the heightened pleading requirement required by Rule 9.

### B. Count Two of the Amended Complaint Alleging Fraudulent Concealment Does Not Comply With Rule 9

To properly plead a claim of fraudulent concealment, Plaintiff must allege "concealment of facts by one with knowledge . . . and a duty to disclose, coupled with an intention to mislead or defraud." *Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶ 66, 179 Vt. 167, 193, 893 A.2d 298, 320 (quotation marks and citations omitted). In support of this claim, Plaintiffs allege "Defendants owed fiduciary duties to disclose material case developments and had a duty of candor to the Court. Defendants concealed material facts, including adverse orders and their own noncompliance, such as the Court's rulings in [*Puppolo v. Welch, et al.*,] No. 5:14-cv-00095 (ECF 84 at 18–19; ECF 88 at 19-20)." (Doc. 25 at 5, ¶ 25.)[2] As was the case with Plaintiffs' allegation of fraudulent misrepresentation, these vague and undetailed claims do not meet the heightened pleading requirement of Rule 9. It is impossible for the court to determine what specific facts were concealed, when they were concealed, and how they were concealed. Furthermore, there are no specific facts alleged which demonstrate fraudulent intent. The allegation that Defendants concealed information intentionally may constitute some evidence of an intent to defraud, but standing alone, it is insufficient to show motive, conscious misbehavior, or recklessness as required by Rule 9. *See Bergman v. Spruce Peak Realty, LLC*, 847 F. Supp. 2d 653, 674 (D. Vt. 2012).

[2] Only one of the two documents cited is an order of the Court. Document 84 is an Opinion and Order Denying Plaintiff's Motion to Admit Audio Recordings, Denying Defendant's Motion to Dismiss, Granting in Part and Denying in Part Defendant's Motion for Expenses, Granting Defendant's Motion to Exclude the Opinions of Thomas O'Toole, and Granting Defendant's Motion for Summary Judgment Regarding Plaintiff's Legal Malpractice Claim. Document 88, however, is Defendants' Motion for Summary Judgment. The court believes Plaintiffs' references are to Document 105 which is the Opinion and Order Granting Defendants' Motion for Summary Judgment.

### C. Count Three of the Amended Complaint Does Not State a Claim

To support their claim of breach of contract, Plaintiffs reference their retainer agreement with Defendants in which Defendants agreed to "provide competent, diligent representation; meet deadlines; submit material evidence; keep Plaintiffs informed; and act in Plaintiffs' best interests." (Doc. 25 at 6, ¶ 30.) Plaintiffs assert that Defendants, while acting as Plaintiffs' attorney, failed to perform their duties competently by missing deadlines, failing to oppose dispositive motions, failing to submit court-ordered recordings and other critical evidence, and misrepresenting case status. (*Id.* at 6, ¶ 31.) A claim of legal malpractice, which alleges an attorney acted negligently, is a tort claim. *Bloomer v. Gibson*, 2006 VT 104, ¶ 24, 180 Vt. 397, 406, 912 A.2d 424, 430. To properly state a claim for breach of contract in the context of an attorney-client relationship, Plaintiffs must allege that Defendants breached a special obligation created by the contract, separate from the legal duties imposed on the attorney-client relationship. *See id.*, 180 Vt. at 407, 912 A.2d at 431 (citing *Chavez v. Saums*, 571 P.2d 62, 65 (1977) (Kan. Ct. App.)).

The entirety of Plaintiffs' claims are allegations of attorney negligence in the performance of Defendants' representation of Plaintiffs. The alleged breaches of contract are, in fact, claims of legal malpractice. Plaintiffs do not cite to any "special obligation" created by their contract with Defendants which was breached. These allegations do not state a claim for breach of contract.

### D. Leave to Amend Complaint is Denied as Futile

To address the paucity of specific allegations in the Amended Complaint, Plaintiffs seek leave to file a Second Amended Complaint. The court must determine whether dismissal of the Amended Complaint is appropriate or whether Plaintiffs should be permitted to file their Second Amended Complaint. The court recognizes that leave to amend a pleading should be freely given, but permission to amend is not guaranteed. The court must exercise its discretion to consider

whether the circumstances warrant the opportunity to amend. *See Foman*, 371 U.S. at 182. Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment[.]" *Id.*

Local Rule 15(a) requires that a motion to amend a filing includes a "redlined version of the proposed amendment clearly designating additions and deletions[,]" and a non-redlined version of the proposed amended filing. L.R. 15(a). Plaintiffs' filing fails to comply with this requirement. It is impossible to track the changes between the Amended Complaint and the Proposed Second Amended Complaint. As an example, the court speculates that paragraph 34 in the Amended Complaint, (Doc. 25 at 6, ¶ 34), is paragraph 117 of the Second Amended Complaint, (Doc. 38-2 at 27, ¶ 117.) It is unclear, however, because the redlined version of the proposed Second Amended Complaint does not clearly delineate additions and deletions. Likewise, there are similarities between paragraph 11 of the Amended Complaint, (Doc. 25 at 3, ¶ 11), and paragraph 99 of the proposed Second Amended Complaint, (Doc. 38-2 at 23, ¶ 99.) The court is left to speculate, however, because there is no clear designation of additions and deletions. Plaintiffs' failure to comply with the basic requirements of Local Rule 15(a) makes review of the proposed Second Amended Complaint time-consuming and laborious.

A close review of the proposed Second Amended Complaint reveals many of the same deficiencies as were present in the Original Complaint, albeit to a lesser degree. In the court's Order granting Defendants' request for a more definite statement, the court found the Original Complaint was ambiguous and confusing, improperly contained legal argument, and included improper commentary. (Doc. 24 at 4–5.) Similar flaws exist in the Proposed Second Amended

Complaint. For example, paragraph forty-two alleges that, had Plaintiffs known of Defendants' failed performance, they would not have "incurred expenditure of gratuitously given personal time to Decato as he asked the executor to consult with him on his other legal cases." (Doc. 38-1 at 10, ¶ 42.) The Complaint then includes a lengthy footnote outlining irrelevant and unnecessary details about other communication between Plaintiff and Decato.

> On July 16, 2016, Defendant Decato wrote to the Estate Executor: "Thank you for agreeing to read this – See the attached." The attached was Decato Law's appellate brief in the Supreme Court: . . . Discussion ensued on Decato's other cases; however, on October 30, 2017, only a month after the Estate executor had been deprived of this Court's Opinion 84 that dismissed the Estate's Count I, Legal Malpractice, Defendant Decato focused the executor on another one of his cases . . . and elicited opinion from the executor. On June 7, 2016, before Defendant Decato missed the Estate's July 3, 2016 legal expert report submission deadline, he wrote in an email: "Hi Celeste: I've read, with considerable interest, what you sent me . . . I would note that you have a very interesting manner of writing. Your choice of words is equally interesting. I find myself enjoying your writing and wishing I had a bit more flare with the pen so to speak." Amid this exogenous exchange, Decato falsely represented to the Estate executor that he had filed the legal expert witness's amended report.

Doc. 38-1 at 10, ¶ 42 n.4. The court can find no relevance of this complicated chronology of events to the alleged causes of action.

The extraneous and confusing content continues in paragraph forty-four which makes the incomprehensible allegation that, "Decato's pattern, reborn and perpetuated with his immediate defalcation, was a dangerous construct and done with reckless disregard of the consequences, as Decato knew historically that the stage was set for him to continue to act fraudulently since, despite his having hurt clients' cases three other times, he was still free to practice law." (Doc. 38-1 at 10–11, ¶ 44.) Paragraphs 54–60 allege fraudulent conduct of Attorney Welch, rendering it difficult to differentiate the allegations against Attorney Welch from the specific allegations against Defendant Decato. (*See id.* at 14–16, ¶¶ 54–60.)

The court is further concerned that the proposed Second Amended Complaint mischaracterizes language in court orders that were issued in the underlying legal malpractice case. For example, in support of Plaintiffs' allegations that Defendants failed to submit a legal expert's report in a timely manner, Plaintiffs allege that the court described "the worth" of the expert's testimony. (Doc. 38-2 at 9, ¶ 45.) The Second Amended Complaint quotes the court's decision where it is merely quoting the expert's report. The court's inclusion of the language from the expert's report was not a comment on the worth of the expert's report in a positive manner but was merely a summary of the expert's opinion. In fact, the court went on to find that, regardless of the untimeliness of its disclosure, the expert's opinion failed to meet the *Daubert* standard, and the court refused to admit the opinion for that reason.[3]

Another example of mischaracterization of the court's language is found in paragraph sixty-one of the Second Amended Complaint, which reads:

> This Court cited the Estate's evidentiary omissions by Welch that Defendant Decato, unbeknown to the Estate executor, knew from day-one he would never perform:
>
> a. The failure to use a police report at trial
> b. The failure to call essential fact witnesses
> c. The failure to call Philip R. Totonelly, M.D., Plaintiff's medical expert for causation
> d. The failure to use hair sample forensics
> e. The failure to introduce evidence that Eva Puppolo's healthcare providers falsified records
> f. The failure to use audio tapes to impeach defense witnesses
> g. The failure to introduce Eva Puppolo's will at trial
>
> (Case 5:14-cv-00095, Opinion Document 88 at 2, ¶ 4, and 3, ¶¶ 1-2.)[4]

---

[3] Both parties have referenced and quoted from Orders in the underlying legal malpractice case against Attorney Welch. The court may take judicial notice of its own court records. *In re Celsius Network, LLC.*, No. 22-10964, 2026 WL 1948372, at *9 (Bankr. S.D.N.Y. July 6, 2026); Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[4] Although Document 88 is not an Opinion, the court speculates Plaintiffs intended to refer to the Court's Order Granting Motion for Summary Judgment, which is Document 105.

Doc. 38-2 at 14, ¶ 61.

This description suggests the court found these were, in fact, evidentiary omissions and that Defendants knew they were not going to perform. This was not the finding of the court. Instead, it appears these listed facts are taken from the court's outline of the facts alleged in the underlying complaint. *See Puppolo v. Welch, et al.*, No. 5:14-cv-00095, 2018 WL 3037383, at *2 (D. Vt. June 19, 2018) ("Count I alleges that '[f]ailing to call Dr. Totonelly as a witness' 'violated . . . acceptable standards of care[,]' while Count III alleges that 'Mr. Welch promised…that he would call Dr. Totonelly as an expert witness, first in the case in chief, and then in rebuttal.'" [citation omitted]. Counts I and III both allege other acts and omissions by Defendants including: the failure to use a police report at trial; the failure to use hair sample forensics; the failure to introduce evidence that Eva Puppolo's healthcare providers falsified records; the failure to use audio tapes to impeach defense witnesses; and the failure to introduce Eva Puppolo's will at trial."). These mischaracterizations of the court's orders are problematic and add to confusion in an otherwise confusing complaint. The failings in the Second Amended Complaint are relevant considerations in determining whether to grant the opportunity to amend a complaint. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (denial of leave to amend not an abuse of discretion when court amendment would be unproductive).

Beyond these issues, Defendants assert that amendment should not be permitted because any amendment would be futile. (Doc. 40.) The court concurs. To prevail on their claims against Defendants, Plaintiffs must establish that, but for fraudulent acts of Defendants, they would have succeeded in the underlying action against Welch. *See Sachs v. Downs Rachlin Martin PLLC*, 2017 VT 100, ¶ 17, 206 Vt. 157, 163, 179 A.3d 182, 186–87; *Mansfield v. Heilmann, Ekman, Cooley, & Gagnon, Inc.*, 2023 VT 47, ¶ 20, 218 Vt. 359, 366–67, 308 A.3d 533, 539 ("To meet the

proximate-cause requirement, 'a plaintiff must prove it is more likely than not that, but for the attorney's negligent conduct, the plaintiff would not have been harmed.'") (citation omitted). In other words, to prove causation in this case, Plaintiffs must establish that they would have prevailed in the original wrongful death and medical malpractice claim involving the death of Eva Puppolo and the legal malpractice case against Attorney Welch. This is referred to as the "case-within-the-case" methodology. *Rubens v. Mason,* 387 F. 3d 183, 190 (2d Cir. 2004). Here, there are two prior decisions which preclude Plaintiffs from re-litigating these issues.

In the original legal malpractice case against Attorney Dodig, Attorney Dodig conceded that he was negligent in his duties to Plaintiffs. (Doc. 26-2.) As a result, the only issue decided by the jury was whether Plaintiffs would have prevailed on the medical malpractice claim. Following a seven-day trial, the jury returned a verdict for Attorney Dodig, concluding that Plaintiffs failed to prove medical malpractice. (*Id.*). Plaintiffs appealed to the Vermont Supreme Court, and the judgment was affirmed. *Puppolo v. Donovan & O'Connor, LLC*, 2011 VT 119, ¶ 24, 191 Vt. 535, 541, 35 A.3d 166, 175. In this same decision, the Vermont Supreme Court upheld the trial court's finding that Attorney Welch's choice to call a particular expert witness was a strategic decision within the purview of his role as Plaintiffs' attorney. *Id.* ¶ 17, 191 Vt. at 538–39, 35 A.3d at 172–73.

Issue preclusion prohibits "the subsequent relitigation of an issue which was actually litigated and decided in a prior case between the parties resulting in a final judgment on the merits, where that issue was necessary to the resolution of the action." *Berlin Convalescent Ctr., Inc. v. Stoneman*, 615 A.2d 141, 144 (Vt. 1992) (quotation marks and citation omitted). The goal of issue preclusion, like the related but broader concept of claim preclusion, is to "protect the courts and

the parties against the burden of relitigation, encourage reliance on judicial decisions, prevent vexatious litigation and decrease the chances of inconsistent adjudication." *Id.*

For issue preclusion to apply, the following elements must be established:

> (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

*Id.* at 56-57 (quoting *Trepanier v. Getting Organized, Inc*, 583 A.2d 583, 587 (Vt. 1990)).

In the earlier legal malpractice case against Attorney Dodig, a jury found Plaintiffs did not establish the elements of the wrongful death claim. (Doc. 26-2 at 1.) Additionally, the Supreme Court of Vermont upheld the trial court's finding that Attorney Welch made strategic choices within his discretion as Plaintiffs' attorney. *Puppolo v. Donovan & O'Connor, LLC*, 2011 VT 119, ¶¶ 16–17, 191 Vt. 535, 538–39, 35 A.3d 166, 172–73 ("The primary conflict was over the way in which the case would be tried, and plaintiff points to little more than her disagreement with these decisions to support her motion."). Plaintiffs do not appear to dispute that the five elements of issue preclusion apply to these findings. To the extent there is a dispute, the court finds that each of the elements of issue preclusion have been found. The precise issue as to whether a wrongful death claim would be successful was decided in the original case against Attorney Dodig, and it was decided against Plaintiffs. A court has already determined that Attorney Welch's actions fell within his discretion as Plaintiffs' attorney. The jury's verdict in the case against Dodig and the Vermont Supreme Court's holding in *Puppolo v. Donovan and O'Connor, LLC*, constitute final judgments on the merits, with Plaintiffs having a full and fair opportunity to litigate their claims. These issues are identical to what Plaintiffs would need to prove to demonstrate that, but for

Defendants' actions, Plaintiffs would have succeeded in the underlying case. The court also finds that applying preclusion in this action is fair.

Plaintiffs assert that issue preclusion is not appropriate because of the Defendants' alleged fraud on the court and on Plaintiffs during trial. In support of their position, Plaintiffs argue that "Vermont law holds that there is no binding power over Plaintiffs when court decisions made were based on fraud and promulgated by incorporating into rulings bad acts of defendants, including the deceptive if not felonious machinations of representative attorneys themselves." (Doc. 41 at 10, ¶ 34 n.5.) Plaintiffs provide no citation to Vermont law to support this statement of the law. Plaintiffs continue "Vermont law also holds that fraud in cases such as Plaintiffs' matter may be so egregious that it is as if it never existed in the eyes of the law and cannot be ratified under the guise of any other pretense." (*Id.* at 10, ¶ 34 n.6.) Again, Plaintiffs cite no Vermont cases to support this contention.[5]

Plaintiffs cite the Second Restatement of Judgments to establish the fraud exception to the applicability of issue preclusion. *See* Restatement (Second) of Judgments § 28(5) (A.L.I. 1982). Recognizing that a rigid application of issue preclusion may result in unfair outcomes, this section of the Restatement outlines circumstances under which the court should not apply issue preclusion. "[S]uch instances must be the rare exception, and litigation to establish an exception in a particular case should not be encouraged. Thus it is important to admit an exception only when the need for a redetermination of the issue is a compelling one." *Id.* § 28 cmt. g. This may occur when the party who seeks to relitigate the issue did not have a full and fair opportunity to litigate their claim because of the conduct of his adversary or other special circumstance. *Id.* cmt. j. Such conduct

[5] Plaintiffs include the following language in their Reply to Defendants' Opposition to Plaintiffs' Leave to File Second Amended Complaint: "[t]he *Cavanaugh* court opined what *Nudd* first held in the United States Supreme Court: 'Fraudulent conduct vitiates whatever it touches.' *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516, 520 (1985)." (Doc. 41 at 10, ¶ 35.) This language is not found in *Cavanaugh*.

by an adversary includes "conceal[ing]… information that would materially affect the outcome of the case[,]" which is "of particular concern if there is a fiduciary relationship between the parties." *Id.* In this scenario, a court may refuse to give the first judgment preclusive effect, but there must be "a compelling showing of unfairness[.]" *Id.* The court cannot find that the allegations made by Plaintiffs constitute such an exception.

In addition to barring issue preclusion in the face of fraud, a court may, in limited circumstances, provide a party with relief from judgment based on a finding of fraud. Although Vermont Rule of Civil Procedure 60(b) has a one-year limitation for seeking relief from judgment based on fraud, this rule does not limit a court's ability to set aside a judgment for fraud upon the court, regardless of when it is discovered. Vt. R. Civ. P. 60(b). An attorney may perpetrate fraud which prevents a court from engaging in its normal process of adjudicating issues in an impartial manner. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944) (overruled on other grounds by *Standard Oil Co. of Cal. v. United States*, 429 U.S. 17 (1976)). If Plaintiffs allege that Attorney Welch committed fraud upon the court in the prosecution of the claim against Attorney Dodig, that court would be in the best position to appreciate the specifics of the allegedly fraudulent activity. There is no evidence to suggest that Plaintiffs have presented their claims of fraud to the court that tried the original legal malpractice case, as permitted by Vermont Rule of Civil Procedure 60(b). This is the more appropriate avenue to address fraud upon the court rather than in a different court after several other lawsuits have been filed. The court concludes application of issue preclusion is appropriate and renders any further amendment futile.

**Conclusion**

Defendants' Motion to Dismiss is GRANTED. Defendant's Alternative Motion for a More Definite Statement is DENIED as moot. Plaintiffs' Motion for Leave to File Second Amended Complaint is DENIED.

DATED at Rutland, in the District of Vermont, this 30th day of September 2026.

Mary Kay Lanthier
United States District Judge